### J. B. ERWIN's EXOR. v. P. C. BEDFORD, GUARD.

**Fiduciary Relations—Release of an Implied Warranty.**
 A release by a guardian, to a special receiver, of an implied warranty, of title to notes, made to and in the name of the receiver, is not a release of his liability for moneys coming into his hands, and improvidently loaned, nor his fiducial acts.

**Discharge—Trust—Receiver Appointed to Handle Funds of Minors.**
 A receiver, appointed by the court to loan funds of minors, who makes his report, showing the amount loaned, but does not turn over to the guardian the securities, though they be then in suit, and who is then discharged, is held not to be released from his liability incurred to the minors because of a mismanagement of the trust, but is only a discharge to act subsequently as receiver.

**Trusts—Duty of Trustee.**
 It is the duty of a trustee, handling the property of minors, to prosecute their interests fully and not to make the trust secondary to his own personal interest, where he holds securities for both, against the same debtor.

APPEAL FROM MONTGOMERY CIRCUIT COURT.

March 1, 1869.

OPINION OF THE COURT BY JUDGE WILLIAMS:

The testator, Erwin, having been administrator of Peter Fitz-patric and having realized the assets, procured himself to be appointed receiver by order of the Montgomery circuit court to loan out the funds to make them productive.

He loaned to E. G. O'Rear $1,060, and took his note at one year, with the name of his father, J. C. O'Rear, appearing as his security. The evidence indicates that he loaned this fund at six per cent. interest; he made O'Rear pay him *a good fee* for so doing, and that whilst he required O'Rear to bring his father into his presence and sign the note for money which he loaned of his own, he trusted him to take this note away and afterwards return with J. C.

O'Rear's name appearing to it, and this, too, after E. G. O'Rear had proposed to sign his father's name as security.

After the debt became due and E. G. O'Rear was known to be in laboring circumstances and which future developments manifested was then insolvent, Erwin brought suit and had the writs executed in time to take judgment at the February term, 1859, of the circuit court. He then being informed by the sheriff, who executed the writ, that J. C. O'Rear said he had neither signed nor authorized his name to be signed to the note, but supposed he would have to pay it.

Instead, however, of taking judgment by default on said note, as there was no defense put in by either of the obligors, he on the second day of the term reported his acting as receiver and specifying the obligations for which he had loaned the assets, designating this one as then in suit, and caused the report to be confirmed and he discharged, and though the note was payable to himself as receiver and the suit brought in his name as such, he neither asked judgment nor notified the then guardian of Fitzpatric's minor children of this suit, but at the same time took several judgments against E. G. O'Rear and his securities for money which he had personally loaned him and made all these judgments. And at the following July term of the chancery court, a judgment was rendered against O'Rear in favor of Erwin's mother-in-law, which Erwin managed and collected; all the judgments rendered at the February term, 1859, against O'Rear were made.

The suit by some means was filed away and not discovered by the then guardian Greenwade, but several years afterwards, when Bedford, who brought this suit, became guardian, with his counsel, he searched for it and found it thus filed away, then brought suit against E. G. and J. C. O'Rear. The latter put in a plea of *non est factum,* and succeeded upon this issue.

In this trial, Erwin having made Bedford believe he could establish J. C. O'Rear's liability, and he having previously assigned said note without recourse to Bedford, and the court deciding that such assignment imported a guaranty of legal liability of the purported obligors, and therefore rendered him incompetent.

Bedford gave a special release on this implied warranty, but as to nothing else, when, notwithstanding Erwin's testimony J. C. O'Rear succeeded, after all which, Bedford brought this suit against Erwin's executors, he having in the meantime died, to fix

a liability on his estate, and the jury finding and the court rendering judgment thereon, the executor seeks a reversal.

Greenwade, the then guardian, was no party to the report and settlement made by Erwin, as receiver, with the circuit court, it could therefore be but *prima facie* evidence at best, nor did the discharge then entered have the legal effect to discharge him from future duty to act as such receiver, not, however, from duty to husband and hand over to the guardian the assets then in his hands. He was not released from the duty of taking judgment on said suit, and could only have released himself from this by handing it over to the guardian and giving him control of it, and as it was manifest E. G. O'Rear was then on the eve of insolvency and Erwin in making debts due himself, courts should not be hasty in adjuding him released by such an *ex parte* report, especially as he had not in the first instance manifested the same prudence in seeing that J. C. O'Rear signed this note as he did when he loaned his own funds.

The release by Bedford to Erwin was special and only affected his implied warranty on the assignment and was no release of other liabilities for sued money and his fiducial acts.

We are satisfied that the judgment was legally and morally right and that there was no error in the instructions to appellants prejudice.

Wherefore, it is *affirmed*.

*N. P. Reid, for appellant.*

*Turner, Cornelison, Reid & Reid, for appellee.*